UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-CV-00471-MOC

| | |
|---|---|
| **MARIO LEON ALLEN,** | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) **ORDER** |
| **ANDREW M. SAUL,** | ) |
| **Commissioner of Social Security,** | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on review of a final decision of the Commissioner of Social Security denying Plaintiff Mario Leon Allen's application for supplemental security income. Plaintiff filed a Motion for Summary Judgment, seeking remand for rehearing. Doc. No. 13. The Commissioner in turn filed a Motion for Summary Judgment, requesting affirmance. Doc. No. 17. As set forth below, Plaintiff's motion is granted, the Commissioner's motion is denied, and this matter is remanded for reconsideration consistent with this opinion.

**I.  BACKGROUND**

**A.  Administrative Exhaustion**

Plaintiff received supplemental security income as a child. Tr. 79. On December 1, 2014, Plaintiff attained age 18, so his disability eligibility was reevaluated under the rules for determining disability in adults. Id. A state agency disability officer determined Plaintiff was not disabled as of December 1, 2014, so he filed a written request for a hearing before an Administrative Law Judge ("ALJ") on August 7, 2015. Id. Plaintiff appeared and testified at a hearing on July 28, 2017. Id. On May 24, 2018, the ALJ issued a decision, finding that Plaintiff was disabled within the meaning of the Social Security Act ("the Act") from February 12, 2003 through November 15,

2017, but not thereafter. Tr. 99. Plaintiff requested review from the Appeals Council, but the Council denied review on May 30, 2019 and November 5, 2019. Tr. 1, 7. Plaintiff has exhausted available administrative remedies, so this case is ripe for judicial review under 42 U.S.C. § 405(g).

### B. Sequential Evaluation Process

The Act provides that "an individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see id. § 423(d)(1)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act in the first instance:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that meets or equals a listed impairment in Appendix 1 of Subpart P of Part 404, a finding of disabled will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. §§ 404.1520, 416.920. The claimant "bears the burden of production and proof during the first four steps of the inquiry." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant carries its burden through the fourth step, the burden shifts to the Commissioner to show other work exists in the national economy that the claimant can perform. See id.

If a claimant is found disabled under the Act, the Commissioner periodically reviews whether medical records show continued entitlement to benefits, applying a seven-step sequential evaluation process to determine whether a claimant's disability continues under the Act:

1. An individual whose impairments or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 will be found to have a continuing disability.

2. If not, the adjudicator must determine if medical improvement has occurred as demonstrated by a decrease in medical severity. If there has been no decrease in medical severity, there has been no medical improvement.

3. If there has been medical improvement, the adjudicator must determine whether that improvement is related to an individual's ability to work, *i.e.,* whether that has been an increase in the residual functional capacity based on the impairment that was present at the time of the most recent favorable medical decision

4. If, there was no medical improvement or no medical improvement related to the ability to work, the adjudicator must decide whether certain exceptions to medical improvement apply. If not, the individual's disability continues.

5. If there was medical improvement related to the ability to work, the adjudicator must determine whether an individual's current impairments in combination are severe. If the current impairments in combination do not significantly limit the individual's physical or mental abilities to do basic work activities, the individual will no longer be considered disabled.

6. If an individual's combination of impairments is severe, the adjudicator will reassess their current residual functional capacity and decide whether the individual is capable of performing past relevant work. If so, the individual's disability has ended. If not, the analysis proceeds to the last step.

7. If an individual's current residual functional capacity precludes performance of past relevant work, the adjudicator must look to other additional factors, including age, education, and past work experience to determine whether they are able to perform other work. If so, the individual's disability has ended. If not, the individual's disability continues.

See 20 C.F.R. §§ 404.1594, 416.994.[1]

---

[1] The Commissioner suggests in passing that the same burden-shifting analysis applies when reassessing disability as initially assessing disability. Doc. No. 18 at 4. Several courts have disagreed. See Griego v. Sullivan, 940 F.2d 942, 944 (5th Cir. 1991) (noting a burden-shifting

### D. The Administrative Decision

The issue before the ALJ was whether Plaintiff was disabled from December 1, 2014—the date he turned 18 and was found to be no longer disabled—to the date of the ALJ's decision. Tr. 79–80. Using the five- and seven-step sequential evaluation processes, the ALJ held that Plaintiff was disabled within the meaning of the Act from February 12, 2003 through November 15, 2017, but not thereafter. Tr. 80.

First, using the five-step sequential evaluation process, the ALJ found that Plaintiff was disabled from February 12, 2003 through November 15, 2017. To begin, the ALJ determined that the first step of that process did not apply because Plaintiff received supplemental security income benefits as a child. Id. (citing 20 C.F.R. § 416.987(b)). At step two, the ALJ decided that Plaintiff suffered from the following severe impairments: epilepsy, depression, schizoaffective disorder, bipolar affective disorder I with psychosis, and cannabis use disorder. Tr. 83. But at step three, the ALJ concluded that this combination of impairments did not meet or equal the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Id.

Before turning to step four, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with several non-exertional limitations. Tr. 84. Specifically, Plaintiff: could occasionally climb ramps and stairs; could not climb ladders, ropes, or scaffolds; must avoid concentrated exposure to extreme heat; must avoid working at unprotected heights around moving mechanical machinery; and must avoid operating a motor

---

analysis runs contrary to 42 U.S.C. § 423(f), which "clearly places the ultimate burden of proof on the Secretary"); see also Kennedy v. Astrue, 247 F. App'x 761, 765 (6th Cir. 2007); Glenn v. Shalala, 21 F.3d 983, 987 n.2 (10th Cir. 1994) (citing Polaski v. Heckler, 751 F.2d 943, 945–46 (8th Cir.1984), vacated and remanded on other grounds sub nom., Bowen v. Polaski, 476 U.S. 1167 (1986)). Neither party substantiates this issue, and this decision does not turn on whether a burden-shifting analysis is warranted, so the Court declines to consider that issue at this stage.

vehicle.  Id.  Additionally, Plaintiff was limited to: simple, routine, repetitive tasks at a non-production pace; maintaining concentration, persistence, and pace for two-hour periods; occasional interaction with the public and no team-type work with co-workers; and an environment where there are infrequent changes to work routine.  Id.  Significant here, the ALJ also limited Plaintiff to "work that would allow him to have more than one unscheduled absence per month."  Id.  At step four, the ALJ concluded that Plaintiff did not have past relevant work.  Tr. 88.  And, based on Plaintiff's residual functional capacity, the ALJ concluded at step five that, from February 12, 2003 to November 15, 2017, there were no jobs in the national economy that Plaintiff could perform.  Tr. 89.  Therefore, the ALJ found that Plaintiff was disabled during this period.  Id.

Second, using the seven-step sequential evaluation process, the ALJ reevaluated Plaintiff's disability status for the period beginning November 16, 2017 to the decision date.  To start, at step one, the ALJ again found that Plaintiff's combination of impairments did not meet or equal the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  Tr. 90.  At step two, the ALJ determined that Plaintiff showed medical improvement as of November 16, 2017.  Tr. 92.  Specifically, his "seizures improved after he had lobectomy surgery, and his mental health improved due to injections and medications."  Id.  And, while the record contained "no mental health treatments in evidence after the date [of November 16, 2017], there is reference to the fact that he is still in mental health treatment in other medical evidence."  Id.  At step three, the ALJ determined that this improvement was "related to the ability to work" and thus Plaintiff's residual functional capacity had "increase[d]."  Id.  While the ALJ did not otherwise note any changes in Plaintiff's residual functional capacity, she did find he would "no longer require more than one unscheduled absence per month."  Id.  Turning to step five—the next relevant step—the ALJ noted that Plaintiff's "severe impairments are the same as that present from February 12, 2003 through

November 15, 2017." Tr. 90.  And, again, the ALJ noted at step six that Plaintiff had no past relevant work.  Tr. 97.  Still, based on Plaintiff's increase in residual functional capacity, the ALJ found that, beginning November 16, 2017, Plaintiff could perform various jobs that existed in significant numbers in the national economy, including: electronics worker, inspector and hand packager, and salvage laborer.  Tr. 97–98.  The ALJ thus concluded Plaintiff was no longer disabled within the meaning of the Act as of November 16, 2017.  Id.

## II. DISCUSSION

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56.  Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011).  Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'"  Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).

When reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence."  Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012).  Courts do not conduct *de novo* review of the evidence.  See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).  Instead, our inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It "consists of more than a mere scintilla evidence but may be less than a preponderance."  Id.  This Court will not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ."  Id. (alterations omitted).  Put simply, "[w]here

6

conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (explaining courts do not "min[e] facts from the [administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

Here, Plaintiff asserts that this case should be remanded because the ALJ failed to develop the record as to purported increases in his residual functional capacity.[2] It is well-settled that claimants are "entitled to a full and fair hearing of their claims." Sims v. Harris, 631 F.2d 26, 27–28 (4th Cir. 1980). In other words, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, being especially diligent in ensuring the favorable as well as unfavorable facts and circumstances are elicited." Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. 1980) (citations and internal quotation marks omitted). This guarantee of a fair hearing is especially important when a claimant appears *pro se*, as the ALJ has a "duty to assume a more

---

[2] Plaintiff also argues that the Appeals Council erred by refusing to consider new and material evidence that contravenes those purported improvements. See Doc. No. 14 at 17–19. Because the Court finds that remand is appropriate for failure to develop the record, the Court declines to exercise its discretion to consider that issue at this time.

active role in helping claimants develop the record." Sims, 631 F.2d at 28; see Crider v. Harris, 624 F.2d 15, 16 (4th Cir. 1980). If the ALJ's failure to do so results in less than a "full and fair hearing of their claims," then "good cause" may exist to remand "for the taking of additional evidence." Sims, 631 F.2d at 27; see Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981) (same). Lastly, "serious omissions evident in the opinion" of the ALJ demonstrating that a claimant "suffered clear prejudice from the absence of counsel" warrants remand. Walker, 642 F.2d at 715; see Sims, 631 F.2d at 27; Hartsell v. Bowen, 861 F.2d 264 (4th Cir. 1988) (unpublished) (same),

In deciding that Plaintiff's residual functional capacity increased and that he was no longer disabled, the ALJ principally relied on two sources of medical improvement: Plaintiff's "[1] seizures improved after he had lobectomy surgery, and [2] his mental health improved due to injections and medications." Tr. 92. Plaintiff contends that both conclusions suffered from serious factual omissions requiring remand. The Court agrees.

To start, in finding Plaintiff disabled prior to November 16, 2017, the ALJ documented his continuing struggles with seizures and with his mental health. Plaintiff's seizures "were related to an injury where his uncle dropped him when he was one and one-half years old and he had surgery." Tr. 84. "[L]ater as a child, he struck his head, and that triggered the seizures." Id. As Plaintiff aged, he "attempted to work" but "was unsuccessful, as he became overheated, causing his brain to dysfunction." Id. at 84–85. In fact, he "had to call in sick three times due to seizures during his first job." Id. at 85. Plaintiff's recurring seizures were commonplace, and he "had seizures up to three times in a month and sometimes three in one day." Id. After a seizure, Plaintiff needed to "sit down or lie down." Id. "[I]f the seizure was longer than a minute, he would pass out, which happened when he was stressed or overheated in the summer." Also, he "would occasionally get major headaches after having a seizure, for which he took Advil and slept." Id.

As to his mental health, Plaintiff testified that he suffered from "symptoms of depression and bipolar disorder, which included becoming easily stressed by minor issues . . . auditory hallucinations, and . . . difficulty trusting others." Id. Moreover, Plaintiff had "panic attacks, which included symptoms of shortness of breath." Id. He also "had difficulty processing information and thinking due to anxiety" and "had difficulty remembering his education and people's names." Id. Plaintiff was "hospitalized several times for his mental health in 2013 through 2014[, at which time he] reported auditory hallucinations, paranoia, delusions and mood instability." Id. at 86. Summarizing, the ALJ noted that these "symptoms of seizures and mental health symptoms" were "persistent," occurring "despite medical treatment." Id.

On October 11, 2017, Plaintiff received a lobectomy surgery for his seizures. Id. According to the ALJ, after the surgery, Plaintiff recovered such that he was no longer disabled within the meaning of the Act. In support, the ALJ relied on two follow-up reports which were drafted a month after the surgery. On November 14, 2017, Plaintiff was seen by Lauren Colombo, a physician assistant, who wrote that Plaintiff reported "a couple of brief seizures right after [the] hospital discharge [but had] since been seizure free." Tr. 686. Two days later, Plaintiff was evaluated by his epileptologist, Dr. Rajdeep Singh, who noted that Plaintiff discussed "mild 'auras' since the surgery," but "[n]o significant seizures." Tr. 691. Dr. Singh's notes also recognize that Plaintiff previously described his seizures as "starting with an aura." Id. Additionally, Dr. Singh indicated that Plaintiff's "language ha[d] significantly improved since surgery," he denied "any problems with naming or recall," and he "feels much more clear in his mind since surgery." Id. Both Dr. Singh and Ms. Colombo contemplated a follow-up appointment within two to three months to continue monitoring Plaintiff's condition. See Tr. 686, 695.

9

The ALJ issued her opinion on May 24, 2018—more than six months after Plaintiff's documented visit with Dr. Singh. See Tr. 99. Despite the fact that both Dr. Singh and Ms. Colombo contemplated a follow-up evaluation in two to three months, the ALJ did not review or refer to any such notes in rendering a decision. See Doc. No. 14 at 11. Nor did the ALJ solicit a medical assessment as to whether Plaintiff's "auras" continued to impair his ability to work. Tr. 694.[3] Nor did the ALJ receive any testimony from Plaintiff regarding whether the lobectomy improved his ability to work. Rather, the ALJ simply concluded Plaintiff would no longer have "work absences related to his seizures." Tr. 96. These serious omissions evince a failure to fully develop the record, prejudicing Plaintiff's right to a fair hearing on his continuing disability.

The ALJ's failure to develop the record is even more patent when examining Plaintiff's purported improvements in mental health. As the ALJ recognized, Plaintiff testified at the pre-lobectomy hearing that he suffers from "symptoms of depression and bipolar disorder," such as "becoming easily stressed by minor issues, . . . auditory hallucinations, and . . . difficulty trusting others." Tr. 90. The ALJ also pointed out there were "no mental health treatment records in

---

[3] In a follow-up appointment with Dr. Singh on February 19, 2018 that was not before the ALJ, Plaintiff "continue[d] to report 2–3 'auras' every month." Doc. No. 21 at 14. Plaintiff's struggle with "mild auras" certainly appears to be an improvement to his prior condition. But "improvement is a relative concept and, by itself, does not convey whether a patient has recovered sufficiently to no longer be deemed unable to perform work on a sustained basis." Martz v. Comm'r, Soc. Sec., 649 F. App'x 948, 960 (11th Cir. 2016); see Boulis-Gasche v. Comm'r of Soc. Sec., 451 F. App'x 488, 494 (6th Cir. 2011) ("By concluding that some unspecified improvement in Plaintiff's mood cured any anxiety or depression that Plaintiff was experience, 'the ALJ impermissibly substituted his own judgment for that of a physician.'" (citation and alterations omitted)); Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 100 (4th Cir. 2015) (explaining "medical records often span [long time periods, so] it is inevitable that some evidence will show signs of a claimant's improvement and other evidence will show signs of a claimant's regression"); Lockerby v. Saul, No. 1:19-CV-00159, 2020 WL 506752, at *4 (W.D.N.C. Jan. 30, 2020) (same).

10

evidence after [November 16, 2017]" to show an increase[4] in mental health. Tr. 92. Still, the ALJ divined improvement in Plaintiff's mental health based on a "reference to the fact that he is still in mental health treatment in other medical evidence." Id. Of course, ongoing "treatment" does not mean that Plaintiff's mental health has necessarily improved. Nor does some level of improvement necessarily mean that Plaintiff is no longer impaired under the Act. See Martz, 649 F. App'x at 960; Lockerby, 2020 WL 506752, at *4. But again, the ALJ did not solicit notes, testimony, or an opinion whether Plaintiff's mental health actually improved to the point of no longer being disabled under the Act. This failure to inquire into Plaintiff's ongoing impairments was error.

Based on these "serious omissions" evidenced in the record and in the opinion, the Court finds that Plaintiff "suffered clear prejudice from the absence of counsel." Walker, 642 F.2d at 715; see Sims, 631 F.2d at 27; see also Hartsell, 861 F.2d at 264. Accordingly, the Court remands this case to the ALJ for "additional investigation or explanation." Radford, 734 F.3d at 295.

---

[4] The record evidence suggests that Plaintiff's mental health could have declined or at least remained the same after the lobectomy. Prior to the surgery, Dr. Singh warned that Plaintiff's "psychiatric symptoms might become worse with surgery." Tr. 615. And while Dr. Singh thought Plaintiff's language "significantly improved" after surgery, he also found that Plaintif continued to be "verbose with tangential thoughts." Tr. 691, 694. This conflicting evidence accentuates the need to fully inquire into Plaintiff's mental health impairments after November 16, 2017.

11

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment, Doc. No. 13, is **GRANTED** and the Commissioner's Motion for Summary Judgment, Doc. No. 17, is **DENIED**. Pursuant to the power of this Court to enter a judgment affirming, modifying, or reversing the decision of the Commissioner under 42 U.S.C. § 405(g), the ALJ's final decision is **REVERSED**, and this case is hereby **REMANDED** for a decision consistent with this Order.

Signed: August 21, 2020

*[Signature]*

Max O. Cogburn Jr.
United States District Judge